# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| LIVERPOOL FC AMERICA MARKETING GROUP, INC. | § § § § § | |
| | § | Civil Action No. 4:17-CV-00756 |
| v. | § § | Judge Mazzant |
| | § | |
| RED SLOPES SOCCER FOUNDATION, RED SLOPES SOCCER, LLC, RED SLOPES UTAH SOCCER, LLC, WAYNE SCHOLES, AS TRUSTEE FOR RED SLOPES FOUNDATION; HEATHER AMBER SHOLES, AS TRUSTEE FOR RED SLOPES FOUNDATION; AND DAVE HUBBARD, AS TRUSTEE FOR RED SLOPES FOUNDATION | § § § § § § § § § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Dismiss, or to Stay (Dkt. #24). The Court, having considered the relevant pleadings, finds that Defendants' motion should be denied.

### BACKGROUND

In 2015, Liverpool Football Club and Athletic Grounds Limited's ("LFC") entered into a Junior Affiliate Agreement (the "Junior Affiliate Agreement") with Liverpool Management, Inc., which assigned its rights to Liverpool FC American Marketing Group, Inc. ("LFC America"). LFC granted LFC America limited rights to use its trademarks for the purpose of operating a youth soccer program in Texas. LFC also granted LFC America the right to sublicense those same rights to "Expansion Clubs" in other states.

In August 2016, LFC America was approached by Defendants who inquired about entering into a contract with LFC America for the purpose of obtaining a limited license to advertise, promote, develop and operate a Liverpool branded Expansion Club in Utah for youth soccer

("Soccer Club"). On October 12, 2017, LFC America entered into a Soccer Development and Licensing Agreement (the "License Agreement") with Red Slopes Soccer Foundation ("Red Slopes") to go into effect on January 1, 2017.

Before fully executing the License Agreement, Defendants sought two changes to the Licensing Agreement. First, they sought to reduce the minimum number of players for purposes of calculating the Per Player Fee from 500 to 150 players for the first year and from 500 to 450 players for the second year. Second, they sought to change venue to the state of Utah. No other substantive changes other than the specific entities included in the agreement as Licensees were requested or proposed. LFC America consented to reduce the minimum number of players for the first two years as requested, but refused to change venue to the state of Utah.

The License Agreement established Red Slopes as an Expansion Club and began to use the LFC Crest and other LFC trademarks to operate as an LFC youth soccer organization. Following execution of the Licensing Agreement, Defendants began soliciting soccer players and clubs and promoting its Soccer Club, operating under several entities, including Red Slopes Soccer, LLC and Red Slopes Utah Soccer, LLC, and using the licensed Liverpool Trade Name "Liverpool FC International Academy-Utah". The Licensing Agreement obligates Defendants to make several payments to LFC America in exchange for the limited rights to the licensed Liverpool Trade Name and use of the Proprietary Information provided under the Agreement.

LFC America alleges that Red Slopes failed to make any required payments under the License Agreement. Accordingly, on or about August 7, 2017, LFC America sent a Notice of Default to Red Slopes. Red Slopes did not cure the default, and on or about August 23, 2017, LFC America terminated the License Agreement and notified LFC of the termination of Red Slopes' rights to use the LFC Intellectual Property.

On July 27, 2017, Red Slopes filed suit against LFC America in Utah state court asserting claims for fraudulent inducement, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and for breach of the License Agreement. *Red Slopes Soccer, LLC et al. v. Liverpool FC America Marketing Group, Inc.*, Case No.170904802, Third Judicial District Court of Salt Lake County, Utah. Specifically, Red Slopes asserts that "although the [License] Agreement is fraudulently induced and unenforceable, it relied upon LFC America's representations, commenced its soccer club and utilized LFC's marks and curriculum—and, in fact, paid [LFC] all fees required to use the intellectual property." (Dkt. #24 at p. 4).

On October 12, 2017, LFC America filed a motion to dismiss the Utah Case, arguing that a forum-selection clause in the License Agreement barred the parties from litigating their dispute in Utah. On February 16, 2018, the Utah court denied the Utah Motion to Dismiss as to LFC America, finding that it possesses personal jurisdiction over LFC America and that, pursuant to Utah law, Red Slopes' fraud claim renders the License Agreement's forum-selection clause unenforceable at the motion to dismiss stage. On March 8, 2018, LFC America filed a petition seeking interlocutory appeal by the Utah Court of Appeals (the "Petition"). On March 6, 2018, in anticipation of its contemplated Petition, LFC America filed a motion to stay the Utah Case pending the outcome of LFC America's proposed interlocutory appeal (the "Motion to Stay").

On September 9, 2017, LFC America filed suit against Defendants in Texas state court, asserting claims for breach of contract, false representations and descriptions in commerce, common law and statutory unfair competition, and misappropriation of trade secrets and confidential information. The case was removed to this Court on October 20, 2017 (Dkt. #1). On December 29, 2017, this Court granted LFC America's Unopposed Motion for Temporary Stay (Dkt. #21), staying this case until March 29, 2018 (Dkt. #22).

3

On April 19, 2018, the Utah Court of Appeals issued an order denying LFC America's Petition, which sought to appeal the Utah court's denial of the Utah Motion to Dismiss (Dkt. #27, Exhibit 4 at ¶ 8). On April 23, 2018, the Utah state court entered an order denying LFC America's previously-filed Motion to Stay and ordering LFC America to answer Defendants' pleading in the Utah Case within seven days (Dkt. #27, Exhibit 5 at ¶ 9).

On March 29, 2018, Defendants filed a motion to dismiss, or stay under *Colorado River* abstention, or in the Alternative, Motion to Dismiss Under Rule 12(b)(6) (Dkt. #24). On April 12, 2018, LFC America filed its response (Dkt. #25). On April 24, 2018, Defendants filed a reply (Dkt. #27). On April 26, 2018, LFC America filed a sur-reply (Dkt. #30).

## LEGAL STANDARD

### 1. *Colorado River* Abstention

The *Colorado River* doctrine allows a court to abstain from exercising jurisdiction over federal claims under "exceptional circumstances." *Brown v. Pacific Life. Ins. Co.*, 462 F.3d 384, 394 (5th Cir. 2006). The existence of the following six (6) factors determine whether "exceptional circumstances" exist:

> (1) assumption by either state or federal court over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction

*Id*. at 395. The decision to abstain must be based on a careful balancing of important factors as they apply to a case, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id*. Additionally, the doctrine only applies when there are parallel proceedings pending in federal and state court. *Id*. at 395 n.7. Proceedings are considered parallel if they "involve the same parties and the same issues." *Id*. It is not necessary that there be "a mincing insistence on precise

identity of parties and issues." *Id*. The *Colorado River* test "should be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Allen v. La. State Bd. of Dentistry*, 835 F.2d 100, 104 (5th Cir. 1988).

### 2. Motion to Dismiss Pursuant to 12(b)(6)

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Defendants move to (1) dismiss or stay the suit based on *Colorado River* abstention and (2) dismiss the case under Federal Rule of Civil Procedure 12(b)(6). The Court will address each motion in turn.

**1. Motion to Dismiss or Stay Based on Abstention**

Defendants ask the Court to either dismiss or stay the current proceeding because of the Utah state court proceedings arguing that the cases are parallel. Further, Defendants maintain that the *Colorado River* factors weigh in favor of abstention. LFC America responds that the actions are not parallel because the state court proceedings involve different parties and different claims. Additionally, LFC America contends that, if the proceedings are parallel, the *Colorado River* factors do not support a dismissal or a stay in this case.

### A. Parallel Proceedings

Federal district courts have a "'virtual unflagging obligation . . . to exercise the jurisdiction given to them.'" *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). As such, the rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* However, a federal court may abstain if a parallel proceeding presents "extraordinary and narrow" circumstances. *Id.* at 813.

Proceedings are considered to be parallel if they "involv[e] the same parties and the same issues." *Brown*, 462 F.3d at 395 n.7 (quoting *RepublicBank Dall., Nat'l Ass'n v. McIntosh*, 828 F.3d 1120, 1121 (5th Cir. 1987)) (alteration in original). However, "'it may be that there need not be applied in every instance a mincing insistence on precise identity' of parties and issues." *Id.* (quoting *RepublicBank*, 828 F.3d at 1121). Some courts have held that cases are still parallel if they involve "'substantially the same parties' litigating 'substantially the same issues.'" *Alpert v. Riley*, 2011 WL 801978, at *12 (S.D. Tex. Dec. 10, 2011) (citing *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 752 (7th Cir. 2006); *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000); *Allen v. Bd. of Educ., United Sch. Dist. 436*, 68 F.3d 401, 402 (10th Cir. 1995)). As a guiding principle, certain courts ask "whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Id.* (citing *TruServ v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005); *Rowley v. Wilson*, No. 05–30189, 2006 WL 2233221, at *1 (5th Cir. Aug. 4, 2006) (unpublished opinion) (holding that suits were not parallel for *Colorado River* abstention purposes because some defendants that were in the federal case were not present in the state suit, and the plaintiff asserted claims against those defendants in the federal suit, which were not asserted in the state suit)).

Defendants argue that LFC America's claims are parallel with the Utah lawsuit because both cases involve substantially the same parties and also arise from a dispute over the same contract.

In the Utah Case, Red Slopes alleges that LFC America and its officers committed fraud in connection with the negotiation of the Purported Agreement. Red Slopes also alleges that it has nevertheless paid a licensing fee required by the Purported Agreement, which entitles it to continued use of the trademarks and branding material. In this case, LFC America alleges that Red Slopes breached the Purported Agreement and is no longer entitled to use the trademarks and other materials. Thus, Defendants assert that because LFC America in both cases seeks a determination of the Purported Agreement's enforceability and Red Slopes entitlement to continued use of the LFC trademarks, there is a substantial likelihood that the Utah Case will dispose of all claims presented in this case.

LFC America asserts that "the requirement that [the] Court interpret enforceability of the mandatory [forum-selection clause] by applying federal law—in contrast to the Utah court's application of Utah [state law]—negates a finding that the cases are parallel." (Dkt. #25 at p. 9). LFC America also maintains that the parties and the issues are not identical in the two lawsuits. The Utah litigation includes Red Slopes, but not its trustees. (Dkt. #25 at pp. 14–15). In contrast, claims against Red Slopes here are asserted against its trustees. Furthermore, LFC America in this case seeks the enforcement of the License Agreement, an injunction protecting the intellectual property rights violated by Defendants' continued use of the proprietary information, and damages for Defendants' unfair competition and misappropriation. Lastly, LFC America argues that "although Defendants seek to void the License Agreement by asserting fraudulent inducement,

Defendants also seek the benefit of the License Agreement by means of estoppel and declaratory judgment." (Dkt. #25 at p. 15) (footnote omitted).

While the Court is of the opinion that the interpretation of the forum-selection clause adversely impacts parallelism, there are additional reasons why the two suits are not parallel. *See Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 538 (8th Cir. 2009) ("[Plaintiff's] contract claim presents a federal law forum-selection issue, at least in the federal court. This, of course, defeats parallelism[.]"). While some of the parties are the same and some of the issue are the same, some are not. *See Rowley*, F. App'x at 275. The Utah suit only involves four similar parties: LFC America, Red Slopes Soccer Foundation, Red Slopes Soccer, LLC, and Red Slopes Utah Soccer, LLC. There are several other defendants to the federal action—Wayne Scholes, Heather Scholes, and Dave Hubbard, as trustees for Red Slopes Soccer Foundation. Further, even though the two lawsuits are based on the same basic factual allegations—the License Agreement—the issues are not exactly the same. The LFC America asserts new causes of action against all Defendants, including the Lanham Act and the violation of the Texas Uniform Trade Secrets Act ("TUTSA"). Defendants also assert causes of action against LFC America in the Utah suit that are not present in the this case, including fraudulent inducement and violations of the DTPA.

If LFC America prevails in the Utah action, it will have demonstrated it did not fraudulently induce Defendants into entering the License Agreement, nor is it in breach of the License Agreement. That judgment will not have the effect of resolving the issue of whether Defendants misappropriated any trades secrets or otherwise unfairly competed with LFC America. As such, there is not a substantial likelihood that the state litigation would dispose of the claims presented in this case. *See Alpert*, 2011 WL 801978, at *12. Accordingly, the Court finds that this case is not parallel to the Utah suit. *See id.*

9

### B. *Colorado River* Factors

Even if the Court found that this case was parallel to the two state court suits, the Court finds that the *Colorado River* factors weigh against abstention in this case. Defendants argue that the *Colorado River* factors support the notion that the Court should either dismiss or stay the case based on the state court proceedings. LFC America responds that it is only in exceptional circumstances the Court should abstain from exercising jurisdiction, and this is not one of those cases after a balance of the factors. The Court will address each factor in turn.

#### i. Assumption by Either Court of Jurisdiction Over a *Res*

The parties agree that this case does not involve any *res* or property for any court, state or federal, to take control over. "The absence of this factor is not, however, a 'neutral item, of no weight in the scales.' Rather, the absence of this first factor weighs against abstention." *Murphy v. Uncle Ben's Inc.*, 168 F.3d 734, 738 (5th Cir. 1999) (quoting *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1191 (5th Cir. 1988)).

#### ii. Relative Inconvenience of the Fora

In addition to defeating parallelism, if the forum-selection clause providing for exclusive jurisdiction in Texas is enforceable, the Utah forum is incredibly more inconvenient than this forum. Defendants assert that the forum-selection clause is unenforceable because they were fraudulently induced into entering the License Agreement. Thus, the Court will address its enforceability.

When analyzing the enforceability of forum-selection clauses "federal law applies . . . in both diversity and federal question cases." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 516 (1974)). Under federal law, forum-selection clauses "are prima facie valid and should be enforced

unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) ("*The Bremen*"). A forum-selection clause may be found unreasonable when the movant shows: (1) that it is the product of fraud or overreaching; (2) that it violates a strong public policy of the forum; (3) that enforcement of the clause effectively deprives plaintiff of his day in court; or (4) that the fundamental unfairness of the chosen law will deprive plaintiff of a remedy. *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)). The resisting party asserting unreasonableness bears "'a heavy burden of proof.'" *Carnival Cruise Lines, Inc.*, 499 U.S. at 592 (quoting *The Bremen*, 407 U.S. at 17). If the forum-selection clause is found to be reasonable, courts must then determine whether the claims arise under the forum-selection clause. *Ginter ex rel. Ballard v. Belcher, Predergrast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008) (citing *Marinechance Shipping Ltd. v. Sebastian*, 143 F.3d 216, 222–23 (5th Cir. 1998)).

> [U]nreasonable fraud or overreaching 'does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud[,] . . . the clause is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the ***inclusion of that clause in the contract*** was the product of fraud or coercion.' Allegations of such [fraudulent] conduct as to the contract as a whole—or portions of it other than the . . . [forum-selection] clause—are insufficient, the claims of fraud or overreaching must be aimed straight at the [forum-selection] clause in order to succeed.

*Oxysure Therapeutics, Inc. v. Gemini Master Fund, Ltd.*, No. 4:15-cv-821-ALM-CAN, 2016 WL 4083241, at *4 (E.D. Tex. July 8, 2016), *report and recommendation adopted by*, 2016 WL 4039226 (E.D. Tex. July 28, 2016) (emphasis in original) (alterations in original) (quoting *Haynsworth*, 121 F.3d at 963); *accord Safety-Kleen Sys., Inc. v. McCoy Freightliner, Inc.*, No. 4:10-cv-608, 2011 WL 665812, at *6 (E.D. Tex. Jan. 21, 2011), *report and recommendation adopted by*, 2011 WL 665854 (E.D. Tex. Feb. 14, 2011).

LFC America asserts that Defendants' contention that the forum-selection clause is unenforceable rests on alleged fraudulent inducement of the entirety of the License Agreement. Defendants do not seem to contest this issue and even agree that the majority approach in Texas is to require the plaintiff to make a specific claim showing that the forum-selection clause itself was procured through fraud (Dkt. #27 at p. 8). The Court finds Defendants failed to meet their "heavy burden" to show the forum-selection clause is unenforceable.

However, in their reply, Defendants assert that the Utah Supreme Court expressly rejected the majority approach and "allow[s] a plaintiff's claim that the contract was entered into fraudulently to be sufficient to render the forum-selection clause unenforceable" and the Court would violate the Rooker-Feldman Doctrine if it enforces the forum-selection clause. (Dkt. #27 at p. 8) (citiation omitted). "Reduced to its essence, the Rooker-Feldman doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments" except when authorized by Congress. *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004) (internal quotation marks and citation omitted). The Supreme Court has explained that the doctrine is a narrow one and "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Supreme Court has cautioned that in light of the "narrow ground" Rooker-Feldman occupies, it does not prohibit a plaintiff from "present[ing] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Id.* at 293 (quoting *GASH Assocs. v. Village of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993)). In these circumstances, state-law

preclusion principles control. *Id.* at 293; *see also Lance v. Dennis*, 546 U.S. 459, 466 (2006) ("Rooker-Feldman is not simply preclusion by another name.").

One hallmark of the Rooker-Feldman inquiry is what the federal court is being asked to review and reject. *See Exxon Mobil*, 544 U.S. at 284. A federal district court lacks jurisdiction "over challenges to state court decisions in particular cases arising out of judicial proceedings." *D.C. Ct. App. v. Feldman*, 460 U.S. 462, 486 (1983).

The Rooker-Feldman doctrine applies only to state court "final judgment[s]." *Illinois Cent. R. Co. v. Guy*, 682 F.3d 381, 390 (5th Cir. 2012). "To be final[,] a judgment must determine the rights of the parties and dispose of all the issues involved so that no future action by the court will be necessary in order to settle and determine the entire controversy." *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 385 (5th Cir. 2017) (quoting *Wagner v. Warnasch*, 156 Tex. 334,295 S.W.2d 890, 892 (Tex. 1956)). Here, the Rooker-Feldman doctrine does not apply. The subject matter of this case involves the validity of forum-selection clause, not the final determination of a state court judgment. A determination by a state court judge that disregards a forum-selection clause based on an assertion of a fraudulent inducement claim and reserves the issue of its validity until further discovery is conducted is not the same as a state court final judgment. Thus, the Rooker-Feldman doctrine is inapplicable.

As a result, the Court finds that it should enforce the forum-selection clause. The Court must now determine how to enforce the forum-selection clause and whether the forum-selection clause is mandatory or permissive. *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994).

Before determining whether a forum-selection clause is permissive or mandatory, "[a] federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which

it sits" to determine which substantive law governs the interpretation of the forum-selection clause. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S.Ct. 568, 582, 187 L.Ed. 2d 487 (2013); *see Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 494–496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016). The Court then "appl[ies] that substantive law to the language of the [forum-selection clause] to decide whether it is mandatory or permissive." *Weber*, 811 F.3d at 769.

LFC America initiated this action in the Eastern District of Texas. Thus, under *Klaxon*, Texas choice-of-law rules apply. 313 U.S. at 496, 61 S.Ct. at 1021 ("The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts."). In deciding which state's law should govern the construction of contractual rights, Texas law applies the principles stated in the Restatement (Second) of Conflict of Laws (1971) (the "Restatement"). *Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008). Section 187 of the Restatement states:

> Law of the State Chosen by the Parties
>
> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> >
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which,

under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971).

The parties in this case chose Texas law to apply to the License Agreement. The Court turns to whether the forum-selection clause is permissive or mandatory. "A party's consent to jurisdiction in one forum does not necessarily waive that party's right to have an action heard in a different forum." *City of New Orleans v. Mun. Admin. Serv., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004); *see Caldas &* Sons,17 F.3d at 127. "For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive." *City of New Orleans*, 376 F.3d at 504 (citing *Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955 (5th Cir.1974)).

"Where an agreement contains clear, unequivocal, and mandatory language showing that jurisdiction is appropriate only in a designated forum, the clause is considered mandatory. *Oxysure Therapeutics, Inc. v. Gemini Master Fund, Ltd.*, No. 4:15-CV-00821, 2016 WL 4083241, at *5 (E.D. Tex. July 8, 2016), *report and recommendation adopted*, No. 4:15-CV-00821, 2016 WL 4039226 (E.D. Tex. July 28, 2016) (citing *Von Graffenreid v. Craig*, 246 F. Supp. 2d 553, 560 (N.D. Tex. 2003)). Permissive forum-selection clauses authorize jurisdiction in the designated forum, but do not prohibit litigation elsewhere. *See id.* Ambiguous forum selection-clauses must be construed against the drafter. *Keaty,* 503 F.2d at 957.

For a forum-selection clause to be mandatory, the provision must clearly indicate its obligatory nature and refer specifically to venue. The language in the License Agreement's forum-selection clause states

> <u>Governing Law.</u> The provisions of this Agreement shall be controlled and constructed under the laws of the state of Texas, regardless of any conflict-of-law provisions, and venue for any actions that are needed for enforcement or that should

be filed hereunder shall be exclusively in Denton County, Texas and the parties hereby consent to exclusive jurisdiction of Texas courts. All obligations of Licensee are performable in Denton County, Texas where the corporate headquarters for Company are located.

(Dkt. #25, Exhibit 4 at pp. 14–15).

The "words such as 'shall' are indicators of mandatory forum-selection clauses and demonstrate an intent of the parties to limit jurisdiction to a particular forum." *Oxysure Therapeutics, Inc.*, 2016 WL 4083241, at *5. The Court finds the enforceable forum-selection clause to be mandatory. Because forum in mandatory, this factor weighs heavily against abstention.

### iii. The Avoidance of Piecemeal Litigation

This third factor is concerned with potential "inconsistent dispositions of property" when multiple parties make claims in separate lawsuits to a single *res* or underlying property. *See Colo. River*, 424 U.S. at 819. Defendants argue that inconsistent results are a real a possibility because "both the Utah state court and this Court will determine whether Red Slopes is entitled to continued use of the trademarks and other intellectual property (Dkt. #24 at p. 11).

This third factor is concerned with potential "inconsistent dispositions of property" when multiple parties make claims in separate lawsuits to a single *res* or underlying property. *See Colo. River*, 424 U.S. at 819. This case does involve intellectual property, but it does not involve the disposition of property or any *res*, and as such, there is no danger under this factor. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 651 (5th Cir. 2006). If this factor extends to inconsistent decisions regarding the same issues, this factor still does not present any meaningful danger. Any issue that has previously been litigated in that suit, such as validity of the License Agreement or whether Defendants are entitled to continued use of the intellectual property, can be obviated through collateral estoppel. *See id.* Therefore, this factor weighs against abstention.

### iv. The Order in Which Jurisdiction Was Obtained by the Concurrent Fora

The Utah lawsuit was initiated on July 28, 2017, and LFC America filed its original complaint in Texas state court on September 8, 2017. Defendants argue that this factor weighs in favor of abstention because the Utah state court action is much further along than the current case.

"The priority element of the *Colorado River/Moses H. Cone* balance 'should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'" *Murphy*, 168 F.3d at 738 (quoting *Evanston*, 844 F.3d at 1190). Here, both of these cases are in their infancy stages. The Utah case has proceeded only to the extent that it established jurisdiction over LFC America for purposes of its motion to dismiss. The Utah Court of Appeals just recently issued an order on April 19, 2018, denying LFC America's Petition, which sought an interlocutory appeal of the Utah court's denial of the Utah Motion to Dismiss. (Dkt. #27, Exhibit 4). Also, as previously discussed, the Utah state court entered an order on April 23, 2018, denying LFC America's previously-filed motion to stay and order LFC America to file an answer to Defendants' pleading in the Utah Case within seven days (Dkt. #27, Exhibit 5 at ¶ 9).

Defendants do not challenge personal jurisdiction in this Court. As such, the state court proceedings are no further along and this factor weighs against abstention. *Murphy*, 168 F.3d at 738.

### v. Extent Federal Law Provides the Rules of Decision on the Merits

One of the asserted claims in LFC America's First Amended Original Complaint is based on federal law: a violation of the Lanham Act; and the remaining asserted claims are based in state law (Dkt. #13 at pp. 8–12). Defendants assert that "the 'extent to which federal law provides the

rules of decision' weighs in favor of abstention." (Dkt. #24 at p. 13) (citing *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 798 (5th Cir. 2014)). That is a complete misstatement of the law and a mischaracterization of the quoted language. "The presence of a federal law issue 'must always be a major consideration weighing against surrender [of jurisdiction],' but the presence of state law issues weighs in favor of surrender only in rare circumstances.'" *Murphy*, 168 F.3d at 738 (quoting *Evanston*, 844 F.2d at 1193).

LFC America asserts that "although concurrent state court jurisdiction over the Lanham Act claims reduces the significance of this factor with respect to the Lanham Act claims, not even concurrent jurisdiction weighs this factor in favor of abstention." (Dkt. #25 at p. 22). The Court agrees. "Because [this case] involve[s] both federal and state rules of decision, this factor weighs against abstention." *Murphy*, 168 F.3d at 738.

### vi. The Adequacy of the State Proceedings In Protecting the Rights of the Party Asserting Jurisdiction

Defendants argue that the Utah state court is adequate to resolve the disputes, especially when a majority of the asserted claims are based in state law. Defendants further maintain that there can be no argument that states courts are inadequate to resolve the present dispute.

However, adequacy of the state court proceedings do not depend on whether a state court has the ability to decide an issue. Rather, Supreme Court has held that:

> When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all. Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses.

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983).

As such, the question is whether there would be anything left for the Court to do substantively after the resolution of the Utah state case. *See id.* There will still be several remaining issues for the Court to decide: the violation of the Lanham Act, the violation of the TUTSA, and unfair competition. Thus, there is more for the Court to do to resolve a substantive part of the case, and this factor weighs against abstention. *See id.*

### vii. Balance of the Factors

It is appropriate for a federal court to abstain from exercising its jurisdiction only in "extraordinary and narrow" circumstances. *Colo. River*, 424 U.S. at 813. The Court uses the *Colorado River* factors not as a "'mechanical checklist'" but carefully balancing them "'as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Murphy*, 168 F.3d at 738 (quoting *Moses H. Cone*, 460 U.S. at 16). All of the factors weigh against abstention. This case does not present the "extraordinary and narrow" circumstances, which warrant an abstention from jurisdiction. *See Engenium Sols., Inc. v. Carr*, 2012 WL 8432678, at *10 (S.D. Tex. Sept. 28, 2012).

## 2. Motion to Dismiss – 12(b)(6)

Defendants argue that LFC America's First Amended Original Complaint is fatally flawed because it does not contain sufficient factual allegations and should be dismissed. LFC America responds that their First Amended Original Complaint contains enough factual allegations to meet the federal pleading standards.

After reviewing LFC America's First Amended Original Complaint, the Court finds that LFC America pleaded a plausible complaint that gives a short and plain statement of the claims presented for relief in accordance with the Federal Rule of Civil Procedure 8(a). Therefore, the motion to dismiss should be denied.

**CONCLUSION**

It is therefore **ORDERED** that Defendants' Motion to Dismiss, or to Stay (Dkt. #24) is hereby **DENIED**.

**SIGNED this 21st day of May, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE